**\*E-FILED 1/30/09\***

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

LORI BELTRAN, et al.,

    Plaintiffs,

v.

COUNTY OF SANTA CLARA, et al.,

    Defendants.

_____/

NO. C 03-3767 RMW (RS)

**ORDER DENYING MOTION TO COMPEL**

## I.  INTRODUCTION

Defendants Melissa Suarez and Emily Tjhin move to compel compliance with subpoenas issued for the records of therapists Glenda Catanzarite and Roger Duke who treated plaintiffs Lori, Robert, and Coby Beltran after Coby's removal from his parents' custody. Defendants allege that the therapists' records are relevant to the Beltrans' claims and defenses because in paragraph fifty-nine of their first amended complaint ("FAC") they allege emotional distress damages as a result of Coby's removal from his parents' custody. For the reasons stated below, the motion to compel will be denied.

## II.  BACKGROUND

The facts underlying this dispute go back to 2002 when Suarez, a social worker for Santa Clara County's child protective services, investigated whether Lori Beltran was abusing her four-year-old son, Coby. *Beltran v. Santa Clara County*, 514 F.3d 906, 908 (9th Cir. 2008) (en banc).

After investigating, Suarez's supervisor, Tjhin, filed a child dependency petition, which included the facts describing Suarez's investigative findings. *Id*. Suarez also filed a separate custody petition. *Id*. The dependency petition was denied, Coby was returned to his parents, and they then sued Suarez, Tjhin, and other defendants alleging four claims linked to the removal of Coby from their custody and the attempt to place him under the supervision of the state. *Id*. The Beltrans specifically claim that Suarez and Tjhin fabricated the information in their petitions. *Id*.

Coby's parents currently are in the middle of a custody dispute after commencing divorce proceedings in 2006. Defendants believe the therapist records, which go to marital and custody problems, have some overlap with Coby's removal. Such records, according to defendants, could explain another source of the emotional distress the Beltrans allegedly incurred beyond that associated with the removal of Coby, and therefore could support or refute their claim for damages.

## III. DISCUSSION

As noted above, defendants maintain that because the Beltrans allege emotional distress in paragraph fifty-nine of their FAC, they have placed their mental health at issue and have waived any right to withhold their therapists' records. Plaintiffs oppose the motion on the grounds that: (1) the records are irrelevant to their claims for emotional distress; and (2) the therapists were not served with the motion after being served with the subpoenas.[1]

A.   Relevance

Under Rule 26(b)(1) of the Federal Rules of Civil Procedure, parties may obtain discovery of any nonprivileged matter that is relevant to any party's claims or defenses, or "for good cause," discovery of any matter relevant to the subject matter involved in the action. "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id*. The therapists' records relate to both the liability and damages aspects of this action. As such, the records sought are relevant to the Beltrans' claim for emotional distress in paragraph fifty-nine of the FAC.

B.   Therapist-Patient Privilege

---

[1] Serving the motion on the Beltrans rather than the therapists was correct as they have to consent to the disclosure of their records, not the therapists.

2

1    The first question is whether federal or state privilege law applies.  When evidence is
2 relevant to both federal and state claims, a court looks to the federal privilege law.  *Fitzgerald v.*
3 *Cassil*, 216 F.R.D. 632, 635 (N.D. Cal. 2003).  Here, the records from the therapists are relevant to
4 the Beltrans' federal claims concerning Coby's removal, and thus, the federal therapist-patient
5 privilege is applicable.  The next question becomes, therefore, whether the Beltrans waived their
6 therapist-patient privilege to the records at issue, thereby permitting discovery.

7    The Supreme Court ruled in *Jaffee v. Redmond*, 518 U.S. 1, 15 (1996), that a
8 therapist-patient privilege exists under federal common law.  The Court held that confidential
9 communications between therapists and their patients in the course of diagnosis or treatment are
10 protected from compelled disclosure under Rule 501 of the Federal Rules of Evidence.  *Id*.  The
11 privilege, however can be waived,  *id*. at 15 n.14, with the burden of demonstrating non-waiver on
12 the Beltrans.  *Fitzgerald*, 216 F.R.D. at 636.  Importantly, the Court rejected the prior balancing
13 approach where a court would weigh the interests of justice in determining whether the privilege
14 applied.  *Jaffee*, 518 U.S. at 17.

15    Since *Jaffee*, three different approaches have developed to determine when a waiver occurs.
16 First, courts taking the broad approach find that merely asserting emotional distress damages will
17 operate as a waiver.  *Doe v. Oberweis Diary*, 456 F.3d 704, 718 (7th Cir. 2006).  These courts focus
18 on fairness considerations such as a defendant's need to be able to investigate the privileged
19 information to determine whether there are sources of emotional distress other than defendant's
20 conduct.  *Doe v. City of Chula Vista*, 196 F.R.D. 562, 569 (S.D. Cal. 1999).  Second, courts
21 following the middle or "limited broad" approach find waiver where a plaintiff alleges more than
22 "garden variety" emotional distress; that is, courts limit waiver to allegations of a separate tort for
23 emotional distress, specific psychiatric injury, or unusually severe distress.  *Fitzgerald*, 216 F.R.D.
24 at 637 (citing *Jackson v. Chubb Corp.*, 193 F.R.D. 216, 226 (D. N.J. 2000)).

25    Third, courts using the narrow approach hold that there must be an affirmative reliance on
26 the therapist-patient communication before the privilege is waived.  *Id*. at 636.  These courts focus
27 on the privacy interest that is inherent in the privilege and reason that it should be protected even if a
28 plaintiff claims emotional distress damages.  *Id*. at 640.  Waiver under this approach is appropriate

3

1 when the privileged therapist-patient communications are being used as a sword as well as a shield.
2 This could occur when a plaintiff calls a therapist as a witness or presents independent expert
3 testimony concerning his or her mental condition. *Vann v. Lone Star Steakhouse & Saloon*, 967 F.
4 Supp. 346, 349-50 (C.D. Ill. 1997); *Sidor v. Reno*, No. 95 Civ. 9588(KMW), 1998 WL 164823, at *2
5 (S.D.N.Y. 1998).

6 While the Ninth Circuit has yet to address this issue, courts in this district have embraced the
7 narrow approach. *Fitzgerald*, 216 F.R.D. at 639; *Boyd v. City & County of San Francisco*, No.
8 C-04-5459 MMC (JCS), 2006 WL 1390423, at *6 (N.D. Cal. May 18, 2006). In *Fitzgerald*, 216
9 F.R.D. at 637-40, the court noted that the narrow approach best embodied the goals articulated in
10 *Jaffee* while the other approaches do not sufficiently protect the therapist-patient privilege and come
11 too close to the type of balancing that the Supreme Court rejected. Under either the "limited broad"
12 or "narrow" approaches, the Beltrans have not waived their therapist-patient privilege. While
13 paragraph fifty-nine of the FAC recites emotional distress damages (plaintiffs "suffered, and will
14 continue to suffer in the future, severe and enduring emotional distress and disruption of their psyche
15 . . . ."), such language is nothing more than garden variety emotional distress damages insufficient as
16 a basis for privilege waiver. Furthermore, the Beltrans have placed no affirmative reliance on any
17 therapist-patient communication, and explicitly state that they do not want their records released.
18 Should the Beltrans attempt to use any such communication as a sword later in the litigation, a
19 waiver could arise but at this juncture the record reflects that they have not done so.

20 IV. CONCLUSION

21 Accordingly, the motion to compel is denied.

22 IT IS SO ORDERED.

24 Dated: January 30, 2009

RICHARD SEEBORG
United States Magistrate Judge

ORDER DENYING MOTION TO COMPEL
C 03-3767 RMW (RS)

4

**THIS IS TO CERTIFY THAT NOTICE OF THIS ORDER HAS BEEN GIVEN TO:**

Dennis R. Ingols     dingols@rrpassociates.com, admin@rrpassociates.com, rkalnitsky@rrpassociates.com, rrpstaff@yahoo.com, urivera@rrpassociates.com

Douglas D. Durward     Doug@durwardlaw.com

Gregory Joseph Sebastinelli     gregory.sebastinelli@cco.co.scl.ca.us

Melissa R. Kiniyalocts     melissa.kiniyalocts@cco.co.scl.ca.us, marylou.gonzales@cco.sccgov.org

Robert Ross Powell     rpowell@rrpassociates.com, admin@rrpassociates.com, mkao@rrpassociates.com

Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the Court's CM/ECF program.

**Dated: 1/30/09**                                    **Richard W. Wieking, Clerk**

                                                      **By:     Chambers**

ORDER DENYING MOTION TO COMPEL
C 03-3767 RMW (RS)

5